UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

Cecelia M. Whelan,

                     Plaintiff,               CV-04-1385 (CPS)

   - against -               MEMORANDUM OPINION
                                        AND ORDER
AMR Corporation, American Airlines, Inc.,
American Airlines Realty (NYC) Holdings,
Inc., Disano Construction Co., Inc., JDP
Contracting Services, Inc., Oxford
Electronics, Inc., d/b/a Oxford Airport
Technical Services and "John Does" #1 - #3.

                  Defendants.

----------------------------------------X

SIFTON, Senior Judge.

     Cecelia M. Whelan brings this action against the AMR

Corporation ("AMR"), American Airlines, Inc. ("American Airlines,

Inc."), American Airlines Realty (NYC) Holdings, Inc. ("AA

Realty") (together "American"), Disano Construction Co., Inc.,

JDP Contracting Services, Inc., Oxford Electronics, Inc. d/b/a

Oxford Technical Services and "John Doe" #1 through #3 (together

"John Does") alleging that defendants were negligent in

maintaining, operating, managing and controlling the premises at

LaGuardia airport where plaintiff slipped on a metal construction

plate that was covered with snow and ice, and that her injuries

were proximately and solely caused by defendants' negligence.[1]

Presently before the Court are AMR's, American Airlines' and AA Realty's motions for summary judgment pursuant to Federal Rule of Civil Procedure 56.[2] For the reasons that follow, the defendants motions are granted.

## Background

The following facts are drawn from defendant American's Local Rule 56.1 statement, and both parties' affidavits, depositions, and exhibits submitted in connection with this motion.[3] They are undisputed except where noted.

On December 31, 2000, at 4:00 to 4:30 P.M., plaintiff Cecelia Whelan, at the time a flight attendant employed by American Eagle Airlines, while walking on a level walkway or

---

[1] In a related case in New York State Court, the Appellate Division affirmed a New York Supreme Court denial of the Port Authority's motion for summary judgment on the ground that a question of fact remains as to which party performed the work in the area. *Whelan v. Port. Auth. Of N.Y. & N.J.*, 2005 NY Slip Op 5058 (N.Y. App. Div., 2d Dept. June 13, 2005).

[2] Plaintiff did not oppose JDP's motion for summary judgment, which was granted at oral argument on July 12, 2005. Plaintiff did not oppose Disano's motion for summary judgment, agreed to discontinue its claims against Disano, and these claims were ordered discontinued on August 15. Because plaintiff had not served or identified the John Does, the action against the John Does was also ordered discontinued on August 15. Plaintiff stated that they would move for default judgment as to remaining defendant Oxford Electronics, who has not appeared or responded, but has not done so.

[3] Plaintiff has not submitted a Rule 56.1 Statement of Facts, but "[e]ven in cases where the opposing party completely neglects to file a response under Rule 56.1, a district court may conduct a review of the record to determine if summary judgment is appropriate." *Every v. Makita U.S.A., Inc.*, No. 02-CV-8545, 20052005 WL 2757952, *7 (S.D.N.Y. October 24, 2005). Accordingly, I exercise my "discretion to determine whether to overlook a party's failure to comply with local court rules," *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001)(citations omitted), and review the record independently, disregarding any assertions not supported by the record. *See Holtz*, 258 F.3d at 74.

"tarmac" outside of the terminal building at LaGuardia Airport near Gate "D" slipped and fell on a metal construction plate, that was covered with snow and ice. (Def.'s Ex. B, Whelan Dep. at 18, line 15.)  The plaintiff described the area as being outside the terminal building "where the planes pull in . . . [and] where passengers disembark." (*Id.* at 17, lines 6-7.)

Plaintiff never noticed the metal construction plate prior to the accident, and did not see it as she walked along the tarmac.  Based on a view of the area of the accident four or five months later, plaintiff estimated that the plate was roughly seven feet by four feet. (*Id.* at 20, line 7.)  Although plaintiff did not see anyone slip in the area where she fell, she stated that the "rampers" later told her that "people fell there all the time."  She did not know whether anyone had complained about the area before her accident. (*Id.* at 27, line 13.)

The area where plaintiff fell is owned by the Port Authority of New York and New Jersey, and leased from the Port Authority to plaintiff's employer, non-party American Eagle, Inc., a regional airline owned by AMR Corp. (Def.'s Ex. E.)  Under the lease, American Eagle is obligated "to make frequent periodic inspections and . . . shall make all necessary repairs and replacements and do all necessary rebuilding with respect to all parts of the premises." (*Id.* § 7(c).)  The lease provides that

[American Eagle] is and shall be in exclusive control
and possession of the premises and the Port Authority

> shall not in any event be liable for any injury or
> damage to any property or to any person happening on or
> about the premises nor for any injury or damage to the
> premises nor to any property of the Lessee of any other
> person located in or thereon (other than those
> occasioned by the acts of the Port Authority).

(*Id.* § 13(d).)

The area "is not leased by the Port Authority to American

Airlines and American Airlines did not enter into a contract with

the Port Authority or any other entity pertaining to construction

at Gate D1." (Def.'s Mem. Supp. Summ. J. 6.)[4] AMR is American

Eagle's parent company and Guarantor under the lease. As a

guarantor, the lease states that AMR

> absolutely and unconditionally guarantees, promises and
> agrees that the Lessee will duly and punctually pay all
> rentals, fees and other monetary obligations which it
> has or shall have under the Lease and under the Permit
> and that the Lessee will faithfully and fully perform,
> all the other terms, provisions and conditions of the
> Lease and of the Permit on the part of the Lessee to be
> performed, fulfilled and observed.

(Def.'s Ex. E, ¶ 1.)

It is unknown who installed the metal construction plate

that is central to plaintiff's claim.

Plaintiff filed this complaint on December 30 or 31, 2003 in

Supreme Court of the State of New York, County of Queens,

---

[4] An affidavit from an American Airlines facilities manager includes the contradictory statements that "*American Airlines* did not, at the time of the plaintiff's alleged accident have any control or any responsibility for maintenance or repair of the ramp area where the plaintiff allegedly slipped and fell" and in the same paragraph- "The area where the plaintiff allegedly fell was in the exclusive control of *American* and it was the responsibility of *American* to maintain and repair the area." (Def's Mot. Summ. J., Ex. G ¶ 8)(emphasis added)).

alleging that (1) each of the defendants controlled or were otherwise responsible for maintaining the area where the accident occurred; (2) each of the defendants had actual or constructive notice that the conditions were hazardous; (3) each of the defendants disregarded their duty and negligently, carelessly or recklessly caused, allowed or permitted the dangerous conditions to exist; and 4) such negligence was the sole cause of plaintiff's injuries.

On April 2, 2004, AMR Corp., American Airlines and American Airlines Realty (NYC) Holdings, Inc. removed the case to the Eastern District of New York. On June 1, 2005, American, JDP and Disano moved for summary judgment. The plaintiff did not appear before Magistrate Judge Pohorelsky at a status conference on June 23, 2005, which was adjourned *sine die*. Argument with respect to the summary judgment motions was held on July 12, 2005, at which time I directed the parties to brief the issue of whether AMR Corp.'s promise, as guarantor of the lease between American Eagle and the Port Authority, that American Eagle would perform gave rise to a duty of care on the part of AMR that extended to the plaintiff.

At oral argument on July 26, 2005, I directed plaintiff to file an additional affidavit or amended pleading sufficiently setting forth plaintiff's citizenship, having concluded that defendants' Notice of Removal improperly pled diversity

jurisdiction by stating plaintiff's residency rather than domicile or citizenship.  Neither party cured this defect, and on October 3, 2005, I issued an Order to Show Cause why the complaint should not be dismissed for lack of subject matter jurisdiction.  On November 17, 2005, defendant submitted evidence sufficient to establish plaintiff's citizenship and diversity. For the reasons that follow, defendants' motion for summary judgment is granted.

## **Discussion**

### *Jurisdiction*

On April 2, 2004, American filed a notice of removal pursuant to 28 U.S.C. § 1441(a) and 28 U.S.C. § 1332, alleging that at the time the summons and complaint issued, plaintiff "resides" in the State of Connecticut and defendants AMR Corp. and American Airlines, Inc. are Delaware corporations with principal places of business in Texas, and that the amount in controversy exceeds $75,000.  Federal district courts are courts of limited jurisdiction, and must *sua sponte* consider the question whether diversity of citizenship is adequately pleaded, either in the complaint or by notice of removal.  *Mackason v. Diamond Financial LLC*, 347 F.Supp.2d 53, 54-55 (S.D.N.Y. 2004). However, 28 U.S.C. § 1653 provides that defective allegations of jurisdiction may be amended in the trial or appellate courts "where necessary to avoid dismissal on purely technical grounds." 28 U.S.C. § 1653; *see Canedy*, 126 F.3d at 103.  At oral argument

on July 26, 2005, I directed the plaintiff to submit an affidavit sufficiently attesting to plaintiff's citizenship or domicile. Plaintiff failed to do so. On November 17, defendant American submitted evidence of plaintiff's Connecticut citizenship.

Because defendant now alleges that plaintiff is a citizen of Connecticut, and plaintiff seeks $5,000,000 in compensatory damages, this court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).

*Choice of Law*

Neither party addresses which law should apply in this case. Nonetheless, a federal court must look to the choice-of-law rules of the forum state to determine the controlling law. *Reach v. Pearson*, 860 F.Supp. 141, 142-143 (S.D.N.Y. 1994)(citing *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487 (1941). New York applies interest analysis in determining which state's substantive law applies. For rules that regulate conduct, the state where the tort occurred generally applies because that state has the greatest interest in regulating conduct within its borders. *See Heletsi v. Lufthansa German Airlines, Inc.,* 2001 WL 1646518, *3 (E.D.N.Y., December 18, 2001). Because it is undisputed that the tort occurred in New York, I will apply New York substantive law.

*Negligence under New York law*

Under New York Law, to prove that defendants were negligent, plaintiffs must prove that 1) defendants owed plaintiff a duty of care; 2) defendant breached that duty; and 3) that such breach was the proximate cause of plaintiff's injury. *Di Benedetto v. Pan Am World Service, Inc. et al*, 359 F.3d 627, 630 (2d Cir. 2004)(citing *Solomon by Solomon v. City of New York*, 66 N.Y.2d 1026, 1027 (1985)). In New York, liability for a hazardous condition on real property must be predicated upon ownership, occupancy, control or special use of the property. *Franks v. G & H Real Estate Holding Corp. et al*, 793 N.Y.S.2d 61, 63 (N.Y. App. Div. 2d Dept 2005). To hold a defendant liable for negligence, the defendant must owe a duty of care to the plaintiff. *Palsgraf v. Long Is. R.R. Co.,* 248 N.Y. 339, 342 (1928). "The existence and scope of duty is, in New York, a legal question". *Di Benedetto*, 359 F.3d at 627.

*Summary Judgment*

Summary judgment is appropriate "[w]hen the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Rule 56 of the Federal Rules of Civil Procedure provides for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show

that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Elec. Inspectors, Inc. v. Vill. of E. Hills*, 320 F.3d 110, 117 (2d Cir. 2003). A fact is material when it "might affect the outcome of the suit under the governing law." *Id*.

The party seeking summary judgment has the burden of demonstrating that no genuine issue of material fact exists. *Apex Oil Co. v. DiMauro*, 822 F.2d 246, 252 (2d Cir. 1987). Although all facts and inferences therefrom are to be construed in the light most favorable to the non-moving party, the non-moving party must raise more than a metaphysical doubt as to the material facts. *See Matsushita*, 475 U.S. at 586; *Harlen Assoc. v. Vill. of Mineola*, 273 F.3d 494, 498 (2d Cir. 2001). "[A]n adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P 56(e). The non-moving party may not rely on conclusory allegations or unsubstantiated speculation. *Twin Labs., Inc., v. Weider Health & Fitness*, 900 F.2d 566, 568 (2d Cir. 1990). Rather, the non-moving party must produce more than

a scintilla of admissible evidence that supports the pleadings.
*First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289-
90 (1968); *Niagara Mohawk Power Corp. v. Jones Chem. Inc.*, 315
F.3d 171, 175 (2d Cir. 2003).

The trial court's function in deciding such a motion is not
to weigh the evidence or resolve issues of fact, but to decide
instead whether, after resolving all ambiguities and drawing all
inferences in favor of the non-moving party, there is a genuine
issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,
249 (1986); *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d
Cir. 2000).

*American Airlines, Inc., AMR Corp., and American Realty (NYC)
Holdings, Inc.*

In her complaint, Whelan alleges that the three American
Airlines defendants, American Airlines, Inc., AMR Corp., and
American Realty (NYC) Holdings, Inc., each owed plaintiff a duty
of care arising out of their alleged control and possession of
the premises where plaintiff slipped and fell, and breached that
duty, which was a proximate cause of her injuries. Defendants
contend that because American Eagle, Inc. retained exclusive
possession, management and control of the premises where
plaintiff was allegedly injured under the lease between American
Eagle and the Port Authority, none of the American defendants
owed a duty of care to plaintiff, and therefore no genuine issue

of fact remains.[5]  Plaintiff responds that summary judgment is
not proper because the defendants have failed to produce evidence
that they did not perform the repairs, including installation of
the plate on which the plaintiff slipped.  Plaintiff submits that
defendants' motion should be denied with leave to renew upon
conclusion of further discovery pursuant to FRCP 56(f).

In moving for summary judgment, the defendants bear the
initial burden of demonstrating the absence of genuine issues of
material fact.  *Tops Markets, Inc. v. Quality Markets, Inc.,* 142
F.3d 90, 102 (2d Cir. 1998)(citing *Celotex*, 477 U.S. at 323).
The only argument that plaintiff makes in opposition to the
American defendants' motions for summary judgment is that the
defendants have not submitted evidence refuting suggestions that
they may have performed the repairs in question.  (Pl.'s Aff.
Opp'n, 2.)  However, a moving party need not submit evidence to
negate the opponent's claim.  Where the moving party does not
bear the burden of proof at trial, his initial burden on summary
judgement "may be discharged by showing, that is, pointing out to
the district court, that there is an absence of evidence to
support the nonmoving party's case."  *Citizens Bank of Clearwater
v. Hunt*, 927 F.2d 707, 713 (2d Cir. 1991)(citing *Celotex,* 477
U.S. at 325)(internal quotations omitted).  The moving defendants

---

[5] "To hold American Airlines liable in this action for a condition that
existed on property leased by American Eagle, would be akin to holding another
airline, such as Continental or Delta, liable for the condition as it existed
on American Eagle's leased premises."  (Def.'s Mot. Summ. J., at 8.)

have met their initial burden by demonstrating the absence of
evidence to support plaintiff's claim that AMR, American Airlines
or AA Realty should be held liable for plaintiff's injury.
Accordingly, I consider whether plaintiff has pointed to evidence
in support of each of the elements essential to her claim against
each defendant.

*American Airlines Inc.*

Although American Airlines, Inc. was not in possession of
the premises when the accident occurred, plaintiff contends that
there is a question of fact whether American Airlines, Inc.
installed the metal plate when it was the prior lessee.  As
evidence that American Airlines, Inc. was the prior lessee of the
premises is a lease between American Airlines, Inc. and the Port
Authority, dated January 1957, for the non-exclusive use of the
Central Terminal Building.  (Def.'s Ex. F, Ex. G.)  As additional
evidence, plaintiff submits the deposition testimony of a Port
Authority employee in the related state court case who stated
that "at one time it's possible that American Airlines, under
this lease, leased that facility . . . But they currently do
not."  (Pl.'s Further Aff. Opp'n, 26.)

In plaintiff's papers in opposition, counsel states that the
American Airlines defendants "admittedly were responsible for the
inspection, maintenance, and repair" of the premises prior to
July 1999" (Pl.'s Aff. Opp'n, 2), and that defendant American

Airlines, Inc. conceded that "prior to the July 1999 inception of
the lease to American Eagle, a related entity, if not
concuminently [sic] with it, the moving defendants were
responsible for the maintenance and repair of the subject area."
(Pl.'s Further Aff. Opp'n, 2.)  Affidavits of counsel, which
constitute almost the entirety of plaintiff's response to the
defendants' summary judgment motions, where counsel has no
personal knowledge of the events or conditions that gave rise to
the claim, are not admissible as evidence and therefore cannot be
used to meet plaintiff's burden to provide some evidence that the
defendants were responsible for the repairs that allegedly
occasioned Mrs. Whelan's accident.  *Caracciola v. City of New
York*, 1999 U.S. Dist. LEXIS 2983, *8-10 (S.D.N.Y. March 15,
1999)(citing *Danzer v. Norden Systems, Inc.*, 151 F.3d 50, 57 n.5
(2d Cir. 1998); Randell v. United States, 64 F.3d 101, 109 (2d
Cir. 1995) ("because attorney's affidavit did not purport to be
based on personal knowledge, it was inadequate to defeat a motion
for summary judgment".)

Even assuming that American Airlines was the prior lessee of
the property, the general rule is that "liability for dangerous
conditions on land does not extend to a prior owner of the
premises." *Bittrolff v. Ho's Development Corp. et al.*, 77 N.Y.2d
896, 898 (N.Y. 1991)(internal citations omitted).  "A narrow
exception exists and liability may be imposed where a dangerous

condition existed at the time of the conveyance and the new owner has not had a reasonable time to discover the condition, if it was unknown, and to remedy the condition once it is known." *Id*.

Plaintiff, however, submits no evidence to establish the existence of the metal plate prior to American Eagle's assumption of the lease. Instead, plaintiff's counsel says he intends to conduct additional discovery in connection with her state court claim against the Port Authority to determine which party was responsible for installing the metal plate, a matter considered below.[6] Plaintiff has failed to demonstrate that a genuine issue of fact exists to establish that American Airlines was responsible for installing the metal construction plate prior to American Eagle's assumption of the lease, or that it was present when the latter gained possession of the premises.

Nor has plaintiff submitted any evidence which supports the claim that American Airlines exercised control, management, or maintenance of the premises at the time of the alleged accident. "An out of possession owner or lessor is not liable for injuries that occur on the premises unless the owner or lessor has retained control over the premises or is contractually obligated to repair or maintain the premises." *Baker v. Getty Oil Co.*, 242 A.D.2d 644, 645 (N.Y. App. Div. 1997); *see also* Restatement

---

[6] Plaintiff includes in her opposition to the motions for summary judgment a request for a continuance pursuant to Rule 56(f) to complete additional discovery to determine which party installed the metal plate that allegedly was the proximate cause of her injuries.

(Second) of Torts, § 328E.  The lease between American Eagle and the Port Authority provides that American Eagle "is and shall be in exclusive control and possession of the premises and the Port Authority shall not in any event be liable for any injury or damage to any property or to any person happening on or about the premises" (American, Ex. E, § 13(d).)  American Eagle was obligated "to make frequent periodic inspections and . . . make all necessary repairs and replacements and do all necessary rebuilding with respect to all parts of the premises." (*Id.* § 7(c).)  No evidence has been submitted to support the contention that American Airlines, Inc. controlled, managed or maintained the premises at the time of, and leading up to plaintiff's accident.  While evidence of American Airline's control of the premises would create a genuine issue of material fact, Rule 56 requires more than "mere allegations" in opposition to a motion for summary judgment in the face of substantial evidence American Eagle, not American Airlines, had exclusive possession and control of the premises.

*AMR Corp.*[7]

---

[7] Despite my request at the July 12 hearing, that both parties brief the question of AMR's liability as the Guarantor of American Eagle's lease with the Port Authority, plaintiff did not brief this issue but maintained that American Airlines, Inc. may have performed the repairs and could therefore be held liable.  In response to my request, AMR cites case law that, "[a] guarantor is not liable for consequences of guaranty's own negligence or bad faith".  *Keystone Leasing Corp. v. Peoples Protective Life Insurance*, 514 F.Supp. 841, 850 (E.D.N.Y. 1981)(citing *Krafft v. Citizen's Bank*, 139 A.D. 610, 614 (1st Dep't 1910).  This case is not directly on point.  In *Keystone*, a guarantor was not obligated to perform where the plaintiff should have known that the guaranty had never been authorized, and therefore was not valid.

As Guarantor of the lease, AMR

> absolutely and unconditionally guarantee[d], promise[d]
> and agree[d] that . . . [American Eagle] w[ould]
> faithfully and fully perform, all the other terms,
> provisions and conditions of the Lease and of the
> Permit on the part of the Lessee to be performed,
> fulfilled and observed.

(Def.'s Ex. E, Contract of Guaranty ¶ 1.)  One could argue, but

plaintiff does not, that as Guarantor of the lease between

American Eagle and the Port Authority, AMR promised that American

Eagle would perform under the lease, and thereby undertook to

ensure that the premises would be free of hazardous conditions,

which in turn created a duty of care in relation to third-party

plaintiffs such as Cecilia Whelan.  "In the ordinary case, a

contractual obligation, standing alone, will impose a duty only

in favor of the promisee and intended third-party beneficiaries

and mere inaction, without more, establishes only a cause of

action for breach of contract."  *Mauney v. Imperial Delivery

Servs.*, 865 F.Supp. 142, 147 (S.D.N.Y. 1994)(citing *Eaves Brooks

Costume Co. v. Y.B.H. Realty Corp.*, 76 N.Y.2d 220, 226 (1990)).[8]

The New York Court of Appeals has recognized three exceptions to

this general rule:  1) when a contracting party's failure to act

with due care "launches a force or instrument of harm"; 2) when

---

[8] Under New York law, "the rule of strictissimi juris is applicable to
contracts of guaranty, and a guarantor should not be bound beyond the express
terms of his agreement. The liability of a guarantor or the obligation of a
surety is strictly construed. They are held only to the express terms of their
respective agreements, and their liability is strictly limited by the terms,
scope, and meaning of the agreement executed."  *In re Stamell,* 252 B.R. 8, *22
(Bankr. E.D.N.Y. 2000)(citing 63 N.Y.JUR.2d, Guaranty and Suretyship § 116).

the plaintiff relies to his detriment on the party's continued performance; or 3) "when the contracting party has entirely displaced the other contracting party's duty to safely maintain the premises."  1A-5 *Warren's Negligence in the New York Courts* § 5.03.[9]  In the present case, plaintiff presents no evidence or argument that either of the first two exceptions apply.  With regard to the third, upon examination of the Guaranty Agreement, AMR has not completely displaced either American Eagle's duty or that of the Port Authority to safely maintain the premises, and therefore may not be held liable by non-parties to the contract.[10]

As an employee of American Eagle, the plaintiff could expect that the workplace would be reasonably maintained, but without more, such an expectation cannot be extended to AMR.  Other than "conclusory allegations" that AMR controlled, managed, maintained, or made repairs to the premises, plaintiff does not

---

[9] A related theory would confer a duty of reasonable care upon AMR Corp. if it undertook to render a service that it knew or should have known would reduce the risk of physical harm and that (1) the failure to exercise such care increased the risk of harm beyond that which existed without the undertaking, or (2) the person to whom the services were rendered relied on his exercising reasonable care in the undertaking.  Restatement (Second) of Torts §§ 323, 324A.  When an undertaking is a promise, reliance is generally required.  Restatement Drafts ("In the absence of an identifiable trend, this Restatement takes no position on whether a court might dispense with the increased-risk and reliance requirement in some undertakings cases.")

[10] The lease between American Eagle and the Port Authority provides that American Eagle "is and shall be in exclusive control and possession of the premises and the Port Authority shall not in any event be liable for any injury or damage to any property or to any person happening on or about the premises" (Def.'s Ex. E § 13(d).)  The Port Authority reserved the right to re-enter and perform maintenance, as well, and required its approval for all maintenance or repairs to be made by the lessee.  (*Id.* at § 11.)

suggest that she relied to her detriment on AMR's guaranty that American Eagle would perform under the lease.[11]  Plaintiff has submitted no evidence that would confer a duty of care that extended from AMR to the plaintiff.

Even if the guaranty agreement were construed as establishing a tenancy in common among American Eagle and AMR, tort liability is limited to the co-tenant in exclusive possession and control of the premises.  *See Butler v. Rafferty*, 100 N.Y.2d 265, 269 (2003).  A co-tenancy entitles each co-tenant to use and enjoy the entire premises, and also confers a duty to maintain the premises safely.  *See* Restatement (Second) of Torts § 878.  However, when co-tenants agree that one of them shall have exclusive possession of the premises, "liability for personal injuries will fall only on the tenant who exercises possession and control over the area in question."  *Butler*, 100 N.Y.2d at 270.  As discussed above, under New York law, liability is predicated on a landowner's possession and control of the premises.  *Id.; see also Baker*, 242 A.D.2d at 645; Restatement (Second) of Torts, § 328E.  In *Butler*, the New York Court of

---

[11] Nor does plaintiff argue that AMR Corp. should be held liable for American Eagle's negligence by piercing the corporate veil.  Nonetheless, the Court notes that such a claim would also fail.  "A parent corporation will not be held liable for the torts or obligations of a subsidiary unless it can be shown that the parent exercised complete dominion and control over the subsidiary."  *Potash v. Port Authority of New York and New Jersey*, 719 N.Y.S.2d 290 (N.Y. App. Div. 2001).  Aside from the allegations in her complaint, the plaintiff has not put forth sufficient evidence to establish that AMR has exercised such dominion and control over the operations of American Eagle for it to be held liable.

Appeals reasoned that

> [A] cotenant who enjoys the right to use and possess
> the entire premises will be jointly and severally
> liable for any injuries resulting from a defect on the
> premises, *except where the cotenant has surrendered
> possession and control of the portion of the premises
> where the injury occurs*.

*Butler*, 100 N.Y.2d at 270(*emphasis added*). Affirming the grant

of summary judgment, the court in *Butler* held that "the plaintiff

failed to raise a triable issue of fact in response to

defendant's prima facie showing that he did not possess or

control the portion of the property where plaintiff was injured."

*Id*. The present case is analogous. Defendant AMR Corp. has

demonstrated that American Eagle had exclusive possession of the

premises where the plaintiff was injured, and plaintiff has not

presented any showing beyond the speculative that AMR Corp., or

the other defendants for that matter, also possessed or

controlled the area. For these reasons, AMR Corp.'s motion for

summary judgment is granted.

> *American Airlines Realty (NYC) Holdings, Inc.*

AA Realty moves for summary judgment on the ground that it

did not and does not own or lease any premises at LaGuardia,

including the premises where plaintiff's accident occurred. For

the reasons discussed above, and because plaintiff has presented

no evidence to refute defendant's affidavit that AA Realty did

not manage, control, lease or maintain the premises, AA Realty's

motion for summary judgment is granted.

*Plaintiff's Rule 56(f) Motion*

A party opposing summary judgment, pursuant to FRCP 56(f) will not be entitled to further discovery unless the party submits an affidavit explaining: 1) what additional facts are sought and how they are to be obtained; 2) how those facts are reasonably expected to create a genuine issue of material fact; and 3) what efforts the affiant has made to obtain those facts; and 4) why those efforts were unsuccessful. *Employers Ins. Co. of Wausau v. General Star Nat. Ins. Co.*, 2004 WL 1555143, *6 (S.D.N.Y. July 9, 2004)(not reported)(citing *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 926 (2d Cir.1985)).

Plaintiff's affirmation requesting additional discovery suggests that American Airlines may have performed or contracted the repairs prior to American Eagle's assumption of the lease, and that the plate was present when American Eagle assumed the lease, which create genuine issues of material fact, making summary judgment inappropriate at this stage. However, plaintiff's affidavit does not explain what efforts the affiant has made to obtain those facts, and why those efforts were unsuccessful. A scheduling order dated November 4, 2004, by Magistrate Judge Pohorelsky, stated that discovery was to be completed by May 4, 2005. According to a July 11, 2005 letter from the American Defendants opposing plaintiff's request for an

adjournment to complete additional discovery, plaintiff has
conducted no discovery (American Defendants' letter, July 11,
2005). Moreover, plaintiff has not submitted a Rule 56.1
Statement of Facts in opposition to American's motion for summary
judgment and only opposed the summary judgment motions with
affidavits of counsel, a deposition taken in the state court
case, an opinion denying summary judgment in that case, and
several photographs of the accident site. Furthermore, plaintiff
failed to appear before Magistrate Judge Pohorelsky at a
scheduled status conference on June 23, 2005. Because Plaintiff
has failed to meet the requirements under this test, plaintiff's
request for additional time for discovery, pursuant to Rule
56(f)is denied.


## Conclusion

For the foregoing reasons, defendants American Airlines,
Inc.'s, AMR Corp.'s, and American Airlines Realty (NYC) Holdings,
Inc.'s, Rule 56(b) motions for summary judgment are granted. The
Clerk is directed to enter judgment dismissing the complaint
unless plaintiff moves for a default judgment against defendant
Oxford Electronics, Inc. or otherwise states that it will pursue
its claim against Oxford Electronics, Inc. within thirty days of

the date hereof.  The Clerk is also directed to furnish a filed
copy of the within to all parties and to the magistrate judge.


Dated :   Brooklyn, New York

          November 22, 2005



                         By: <u>/s/ Charles P. Sifton (electronically signed)</u>
                             United States District Judge